RECEIVED IN ALEXANDRIA, LA. AUG 24 2010 TONY R. MOORE, CLERK BY___ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JENNIFER KARLE et al. | CIVIL ACTION NO. 1:09-cv-01022 |
| -vs- | JUDGE DRELL |
| AMERICAN INTERNATIONAL GROUP, INC. (AIG), et al. | MAGISTRATE JUDGE KIRK |

## RULING

Pending before the Court is a Motion for Summary Judgment (Doc. 27), filed by Economy Premier Assurance Company ("Economy"). Economy requests to be dismissed from the lawsuit because, according to the motion, it has deposited into the registry of the Court funds satisfying the full amount of its liability in the case. For the reasons that follow, Economy's motion will be DENIED. Disposition will follow by a separate ORDER.

### I. Background

This lawsuit arises from a fatal automobile accident which occurred on February 6, 2008. Tragically, Timothy-Steven Sean Graham ("decedent") was killed in the accident. The decedent was survived by both of his parents, Timothy L. Graham ("Mr. Graham") and Jennifer Karle ("Mrs. Karle") (collectively, "Plaintiffs").[1]

At the time of the accident, Economy insured the decedent under a policy of

---

[1] The suit was originally brought by Ms. Karle alone. However, on February 10, 2010, the Court granted Mr. Graham's Motion to Intervene (Doc. 10), and he was thus added to the lawsuit as an Intervenor Plaintiff. As discussed below, Mr. Graham was also named as a Defendant-in-Interpleader by Economy.

automobile insurance ("Policy"), which had been issued to Mrs. Karle and her husband. The Policy provided underinsured motorist ("UM") coverage to the decedent, with limits of $100,000 for "each person" and $300,000 for "each accident." On August 6, 2009, Economy filed a Petition for Interpleader (Doc. 6), naming as Defendants-in-Interpleader both Mr. Graham and Mrs. Karle. In its Petition, Economy admitted "liability for the full amount of insurance coverage and tender[ed] and deposit[ed] the full liability limits plus legal interest from the date of judicial demand . . . into the registry of the court." (Doc. 6, p. 4). The original amount tendered was $102,802.74.[2] Finally, Economy sought a judgment reflecting that its deposit was sufficient, and dismissing it from the lawsuit.

Both Plaintiffs filed answers to Economy's petition.[3] Economy was not, however, dismissed from the lawsuit, which presumably prompted it to file this Motion for Summary Judgment (Doc. 27). In its motion, Economy argues that it has paid the full amount of the Policy limits, plus legal interest, into the registry of the Court, and thus, should be dismissed from the lawsuit. Mrs. Karle and Mr. Graham, however, argue that: (1) because the UM limits on Economy's policy are $100,000 for "each person," and because they have stated three distinctive causes of action, Economy is liable for a total of $300,000; (2) Economy failed to deposit the proper

---

[2] Economy subsequently deposited $105.48 to cover charges for additional legal interest. The record reflects that both deposits were received and deposited into the registry of the Court, as intended.

[3] Mrs. Karle sought a judgment charging Economy with court costs, because demands for the policy limits were made prior to filing suit. (Doc. 9, p. 3). Mr. Graham averred that whether the full policy limits had been deposited was a determination that should be made by the trier of fact. (Doc. 21, p. 2).

2

amount of legal interest, even on its initial deposit of $100,000; and (3) Economy should be responsible for court costs. We address each of these arguments in turn.

## II. Law and Analysis

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), the Court will grant a party's motion for summary judgment only if:

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In conducting this analysis, the Court must construe "all of the evidence and all of the factual inferences from the evidence . . . in a light most favorable to the party opposing the motion." King Realty Co., Inc. v. Chevron USA, Inc., 575 F.3d 510, 517 (5th Cir. 2009). Any doubts are likewise resolved in favor of the nonmoving party. U.S. ex rel. Longhi v. United States, 575 F.3d 458, 465 (5th Cir. 2009). Once the movant has directed the Court's attention to portions of the record which reflect an absence of a genuine issue of material fact, the nonmoving party bears the burden of demonstrating that a genuine issue of material fact exists. United States v. $ 92,203.00 in U.S. Currency, 537 F.3d 504, 506-07 (5th Cir. 2008). "However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment."

Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996).

### B.   Policy Limits

First, the Plaintiffs contend that there are three distinct causes of action being asserted in this case, each of which independently triggers the $100,000 UM "each person" limit contained in the Policy: (1) the Plaintiffs' joint survival action on behalf of the decedent; (2) Mrs. Karle's wrongful death action; and (3) Mr. Graham's wrongful death action. The Plaintiffs argue that the "each person" limit allows them to recover up to $100,000 for each of these causes of action. Thus, Economy's total liability is $300,000. The Defendants argue, however, that the Policy constrains the Plaintiffs' recovery to a single "each person" limit of $100,000 for all three causes of action.

#### 1.   *The Plaintiffs' Claims*

The Plaintiffs contend, and Economy does not dispute, that the survival action that they have brought on behalf of the decedent is distinct from their wrongful death actions. The Louisiana Civil Code bears this distinction out as well. Under La. Civ. C. art. 2315.1, pertaining to the survival action,

> [i]f a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of . . . [t]he surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.[4]

Moreover, under La. Civ. C. art. 2315.2, pertaining to wrongful death actions, "[i]f a

---

[4] The decedent was not married and did not have any children at the time of his death.

4

person dies due to the fault of another, suit may be brought by . . . [t]he surviving father and mother of the deceased, or either of them if he left no spouse or child surviving."

The Louisiana Supreme Court has clarified that "the survival action and the wrongful death action are two different causes of action that arise at different times." Walls v. Am. Optical Corp., 740 So. 2d 1262, 1273 (La. 1999). The survival action "compensates for the damages suffered by the victim from the time of injury to the moment of his death," while the wrongful death action "compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter." Warren v. La. Med. Mut. Ins. Co., 21 So. 3d 186, 188 (La. 2008). Therefore, the Plaintiffs have stated three distinct causes of action arising from the death of their son.

### 2. Rules of Interpretation

In diversity cases such as this, we must apply the substantive law of the forum state, as interpreted by the state's highest court. See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 399 (5th Cir. 2008). Because the disputed insurance policy was delivered in Louisiana, we interpret it applying Louisiana substantive law. See Thermo Terratech v. GDC Enviro-Solutions, Inc., 265 F.3d 329, 334 (5th Cir. 2001). The Louisiana Supreme Court has provided the following summary of the rules governing the interpretation of insurance policies:

> Interpretation of an insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for

summary judgment. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.

An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes.

If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

Huggins v. Gerry Lane Enters., Inc., 957 So. 2d 127, 129 (La. 2007) (quoting Bonin v. Westport Ins. Corp., 930 So. 2d 906, 910-11 (La. 2006)).

    3.    *The Policy*

In the Petition for Interpleader (Doc. 6), Economy admitted "liability for the full amount of insurance coverage," which, it posited, was capped at $100,000. Therefore, the general issue of coverage is not contested. Rather, following is the disputed provision, which is titled "Limit of Liability":

> The limit of liability shown in the Declarations for "each person" is the most we will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services or death, arising out of **bodily injury** sustained by any one person as the result of any one accident. Subject to this limit for "each person", the limit shown in the Declarations for "each accident" for **bodily injury** liability, is the most we will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services or death, arising out of **bodily injury** sustained by two or more persons resulting from any one accident. This is the most we will pay regardless of the number of:
>
> 1. covered persons;
> 2. claims made;
> 3. vehicles or premiums shown in the Declarations; or
> 4. vehicles involved in the accident.

(Doc. 27-4, Exh. A, p. 12). Again, the Policy provides UM coverage limits of $100,000 for "each person" and $300,000 for "each accident." (Doc. 27-4, Exh. A). Our interpretation of the "each person" limit, as guided by Louisiana jurisprudence, will determine whether Economy is entitled to summary judgment.

The Plaintiffs direct our attention to the Louisiana Supreme Court's decision in Crabtree v. State Farm Insurance Co., where an insured was struck by an oncoming car while riding his motorcycle. 632 So. 2d 736, 738 (La. 1994). The insured's wife was following the insured in a car; she witnessed the accident, and viewed her husband's injuries immediately afterward. See id. The insured's wife brought suit against the insurer, seeking damages for the insured's physical injuries, as well as her own damages for loss of consortium and mental anguish (as provided for in Lejeune v. Rayne Branch Hosp., 556 So. 2d 559 (La. 1990), and now codified in La. Civ.

C. art. 2315.6). The "limits of liability" clause in that case provided as follows:

> The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability-Coverage A-Bodily Injury, Each Person, Each Accident". Under "Each Person" is the amount of coverage [$25,000] for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury. Under "Each Accident" is the total amount of coverage [$50,000], subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.

Id. at 739. "Bodily injury" was defined in the policy as "'bodily injury to a person and sickness, disease or death which results from it.'" Id. at 739.

The Crabtree court's holding was three-pronged: (1) "mental anguish constitutes 'bodily injury' within the meaning of the policy," and therefore, "'bodily injury to one person' as defined therein does not encompass [the insured's wife's] Lejune claim"; (2) "'bodily injury' as defined in the policy herein includes severe and debilitating mental pain and anguish such as that suffered by Lejeune claimants"; and (3) the insured's wife suffered her "bodily injury," or mental anguish, "in the same accident" as her husband. Id. at 743, 745. Ultimately, the court concluded that the insured's wife was entitled to "her own per person policy limit subject to the aggregate per accident limit," and therefore rendered judgment against the insurer for the full aggregate per accident limit of $50,000. Id. at 745.

Economy, however, relies most heavily upon the Louisiana Supreme Court's decision in Hebert v. Webre, where the insured was killed in an automobile accident, and was survived by his wife and their three minor children. 982 So. 2d 770, 772 (La.

8

2008). The insured's wife brought claims for wrongful death and survival. Id. at 772. The policy in Hebert contained the following "limits of liability" clause:

> The amount of coverage is shown on the declarations page under "Limits of Liability-U-Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury, and all emotional distress resulting from this bodily injury sustained by other persons who do not sustain bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.

Id. at 773.

The Hebert court noted several distinctions between this policy and the one analyzed in Crabtree: (1) "'bodily injury' is defined in this policy as '*physical* bodily injury to a person and sickness, disease or death which results from it [emphasis added]' whereas in Crabtree . . ., 'bodily injury' was defined as 'bodily injury to a person and sickness, disease and death which results from it'"; (2) "[i]n Crabtree . . ., 'bodily injury to one person' was defined to include 'all injury and damages to others resulting from this bodily injury,'" while the Hebert policy defined "'bodily injury to one person' to include 'all injury and damages to others resulting from this bodily injury, and all emotional distress resulting from this bodily injury sustained by other persons who do not sustain bodily injury'"; and (3) the insured's wife in Hebert did not witness her husband's accident, whereas the insured's wife in Crabtree witnessed the accident firsthand. Id. at 776-78. Because of these distinctions, the court held that the insured's wife's claims were "subject to a single 'Each Person'

9

limit." Id. at 779.

In this case, the Economy Policy defines "bodily injury" as "any bodily injury, sickness, disease, or death sustained by any person." (Doc. 27-4, Exh. A, p. 1). This definition comports most closely with the one analyzed in Crabtree, because it does not contain the limiting word "physical."[5] Furthermore, in Hill v. Shelter Mutual Insurance Co., the Louisiana Supreme Court reaffirmed its holding in Crabtree that such an ambiguous definition of the term "bodily injury" must be construed to provide coverage for certain types of emotional damages. 935 So. 2d 691, 694 (La. 2006). Therefore, we conclude that the general term "bodily injury" in Economy's Policy may encompass emotional injuries, such as those denoted by the Plaintiffs in their wrongful death claims.

However, unlike the policies in both Crabtree and Hebert, Economy's Policy does not define the term "bodily injury sustained by any one person." (Doc. 27-4, Exh. A, p. 12). This omission in Economy's policy is critical to our determination given the jurisprudence interpreting similar policies. In Crabtree, "bodily injury to one person" was defined only to include "'all injury and damages to others resulting from this bodily injury.'" 632 So. 2d at 739. Because the insured's wife's mental anguish constituted "bodily injury" under that policy, however, the Crabtree court held that "bodily injury to one person" did not encompass her Lejeune claim. Id. at 743. Thus, her claim was "not subject to the single person policy limit applicable to her

---

[5] Conversely, this distinguishes the instant case from Hebert, where the policy at issue defined the term "bodily injury" to include only "'physical bodily injury.'" 982 So. 2d at 773.

10

husband's claim." Id. This ambiguity had been corrected in the policy analyzed in Hebert, where "bodily injury to one person" was defined to include "all emotional distress resulting from this bodily injury sustained by other persons who do not sustain bodily injury." 982 So. 2d at 777. That policy distinguished between physical injuries and emotional distress, and clearly subjected to the single person limit any emotional damages suffered by other persons who had not sustained physical injuries. See id. at 777-78.

Here, Economy's Policy states that its $100,000 "each person" limit is "the most we will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services or death, arising out of ***bodily injury*** *sustained by any one person as the result of any one accident.*" (Doc. 27-4, Exh. A, p. 12) (emphasis added). However, the phrase "bodily injury sustained by any one person" is given no further context in this provision, and no separate definition elsewhere in the Policy. Under similar circumstances, the Louisiana Supreme Court in Hill held as follows:

> The [insurer's] policy at issue defines bodily injury using the same language as did the policy at issue in Crabtree, and, as we previously determined in Crabtree, that language is ambiguous and will be construed so as to provide coverage.
>
> Had [the insurer] desired to limit its liability for "bodily injuries" to others, it could have done so by using the language we recommended in Crabtree: "Bodily injury" sustained by one person includes all injury, including bodily injury, and damages to others resulting from this bodily injury. Shelter failed to do so.

935 So. 2d at 694-95. Economy's Policy suffers from these same deficiencies, and thus may not be interpreted to constrain the Plaintiffs' recovery for all three of their

11

independent claims to a single "each person" limit. Because "bodily injury" may encompass the Plaintiffs' mental distress, and because "bodily injury sustained by any one person" does not necessarily include mental distress suffered by others who did not sustain physical injuries, the Plaintiffs' claims are not jointly subject to the $100,000 "each person" limit.

That conclusion does not end our inquiry. Under existing law, only "severe and debilitating mental pain and anguish" may constitute "bodily injury" which is compensable under an insurance policy. Crabtree, 632 So. 2d at 745. To repeat, the Plaintiffs have stated claims for wrongful death, which, by nature, seek "emotional distress type injuries." Hebert, 982 So. 2d at 778. In determining whether emotional distress arising from a wrongful death constituted "bodily injury," the court in Hill examined the elements of damages involved in wrongful death claims. 935 So. 2d at 695. Those elements include "loss of love, affection, companionship, services, support, medical expenses and funeral expenses." The court went on to hold that "[d]amages for loss of services and support, and for funeral and medical expenses are purely pecuniary and may not reasonably be construed as bodily injury under the terms of this policy." Id. Thus, the court found that "[s]uch damages would clearly be restricted to the "per person" limits of this policy." Id. Likewise, we find that damages for loss of services and support, funeral expenses, and medical expenses may do not constitute "bodily injury" under the Policy, and are thus subject to the "each person" limit.

12

However, "[d]amages for loss of love, affection, and companionship . . . as well as those for mental pain, suffering, and distress are mental injuries which could be termed 'bodily injury' . . . depending on whether the damage rises to the level of 'severe and debilitating mental pain and anguish.'" Id. Determining the severity of mental distress arising from another person's death is a delicate factual inquiry which requires consideration of a number of factors, "including, but not limited to, the closeness of the ties between the parties, the degree of love in the relationship, and the length of the relationship." See id. To this point, the Court has received no evidence regarding these factors. In light of our ruling herein, the parties will have an opportunity to address these questions in subsequent filings or at trial.

**C.  Legal Interest**

Next, the Plaintiffs argue that Economy did not deposit the correct amount of legal interest in the Court's registry. Without discussing the specific calculations, the Plaintiffs contend that Economy underpaid its obligation for legal interest by $3.54, on which interest continues to accrue. Economy counters that it first paid all legal interest which accrued from the date of judicial demand (or the date that suit was filed, February 6, 2009), until the date that it submitted an order to the Court allowing the deposit (August 10, 2009). However, that order was not signed until August 13, 2009 (Doc. 8), and the Court did not receive Economy's deposit until August 17, 2009. Therefore, Economy submitted an additional payment to cover any interest which may have accrued between August 11 and August 17.

In light of the Court's ruling herein, Economy's potential liability under the Policy will be redetermined, and Economy will not be dismissed from the lawsuit at this point. Therefore, the Court pretermits any determination regarding legal interest until the issues regarding Economy's liability have been resolved.

D.     **Court Costs**

Finally, the Plaintiffs argue that Economy is liable for the payment of all court costs incurred before Economy deposited funds into the registry of the Court.[6] The issue of whether to award court costs in an interpleader action rests within the discretion of the Court. Corrigan Dispatch Co. v. Casa Guzman, S.A., 696 F.2d 359, 364 (5th Cir. 1983) ("It is well settled that a district court has the authority to award costs, including reasonable attorney's fees, in interpleader actions."); First Colony Life Ins. Co. v. Bailey-Mason, No. CIV.A. 300CV1417M, 2001 WL 705786, at *4 (N.D. Tex. June 18, 2001) ("The issue of whether to award attorney fees and costs in an interpleader action is within the discretion of the district court.").[7]

Once again, however, various issues remain regarding Economy's potential

---

[6] The Plaintiffs agree that all costs incurred after Economy's deposit must be paid from the funds deposited.

[7] The Fifth Circuit has identified a number of factors which may be considered in making this determination, including "(1) whether the case is simple; (2) whether the interpleader-plaintiff performed any unique services for the claimants or the court; (3) whether the interpleader-plaintiff acted in good faith and with diligence; (4) whether the services rendered benefited [sic] the interpleader-plaintiff; and (5) whether the claimants improperly protracted the proceedings." Royal Indem. Co. v. Bates, 307 F. App'x 801, 806 (5th Cir. 2009). Moreover, "[a]lthough costs and attorney's fees are generally awarded by federal courts to the plaintiff who initiates the interpleader as a mere stakeholder, the plaintiff who enters the conflict (by contesting the ownership of the fund or by disputing the correct amount of his liability) will not, in the absence of special circumstances, be awarded any expenses." Perkins State Bank v. Connolly, 632 F.2d 1306, 1311 (5th Cir. 1980).

14

liability following this Ruling. At this juncture, we may fairly charge all costs associated with the instant motion to Economy. But, as to the remainder of the disputed costs, we pretermit any determination pending final resolution of the issues associated with Economy's liability in the case.

### III.  Conclusion

The overriding principle involved in our decision today is that the we must construe ambiguous provisions in insurance policies against the insurer, and in favor of coverage. See Huggins, 957 So. 2d at 129 (quoting Bonin, 930 So. 2d at 910-11). The Economy Policy contains a number of ambiguities, many of which have been specifically addressed by the Louisiana Supreme Court, and all of which must be interpreted in favor of coverage to the Plaintiffs. Therefore, Economy is not entitled to summary dismissal from the lawsuit, and its motion must be denied.

SIGNED on this 23rd day of August, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

15